SRD USAO 2014R00140

# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) <br> ) <br> v. ) <br> ) <br> **BRIAN TWILLEY** ) <br> ) <br> ) | Criminal Number: SAG-21-07 <br><br> **(False statement on loan or credit application, 18 U.S.C. § 1014)** |

## INFORMATION

## COUNT ONE

The United States Attorney for the District of Maryland charges that:

## INTRODUCTION

At all times relevant to this Information:

1. Defendant **BRIAN TWILLEY** ("**TWILLEY**") resided in Wicomico County, Maryland and Accomack County, Virginia.

2. **TWILLEY** owned a commercial printing business in Wicomico County, Maryland, and was a member of the Faculty for the Economics and Finance Department at Salisbury University.

3. From 2011 through 2015, **TWILLEY** served as a member of the Board of Directors for Hebron Savings Bank ("Hebron"), located in Wicomico County, Maryland.

4. Hebron was a financial institution within the meaning of Title 18, United States Code, Section 20, as its deposits were insured by the Federal Deposit Insurance Corporation ("FDIC") and it was a member of the Federal Home Loan Bank system.

5. Since 2006, Hebron issued several commercial and personal loans to TWILLEY.

-2-

6. As a member of Hebron's Board of Directors and because of his lending relationship with the bank, **TWILLEY** was required to provide personal net worth statements to Hebron annually that detailed his assets, investments and liabilities, to include outstanding loan obligations. These personal net worth statements were available for inspection by examiners of the FDIC.

## TWILLEY'S LOAN HISTORY

7. In or around August 2006, Hebron issued **TWILLEY** a $350,000 HELOC for the purpose of refinancing an existing HELOC TWILLEY held at another financial institution ("Bank #2") as well as to provide additional funds to be used at TWILLEY's discretion. TWILLEY's personal residence was to serve as collateral for the Hebron HELOC.

8. The terms of the Hebron HELOC directed that funds first be used to pay off and close a $200,000 HELOC at Bank #2. In turn, Bank #2 would release their lien on **TWILLEY**'s personal residence so that Hebron could secure a first position lien on this collateral.

9. On or about August 28, 2006, **TWILLEY** signed a letter addressed to Bank #2 directing them to accept payoff of the loan, close the HELOC account and forward the release documents to Hebron. Hebron issued a Teller's Check to Bank #2 in the amount of $200,392.04, which brought **TWILLEY's** HELOC balance at Bank #2 to $0. However, Bank #2 did not receive the letter directing them to close the loan. As a result, Bank #2 did not close **TWILLEY's** account and TWILLEY continued to have access to funds from the HELOC at Bank #2.

10. Beginning in or around 2008, **TWILLEY** drew money from the HELOC with Bank #2. By 2010, **TWILLEY** had again withdrawn the full $200,000 from his HELOC with

-3-

Bank #2. Because the HELOC had not been closed as required by Hebron, Bank #2 retained a first position lien on **TWILLEY**'s personal residence.

11. In or around April 2010, June 2011, June 2012, July 2013, and August 2014 **TWILLEY** provided Hebron with personal financial statements that omitted the continued existence of his HELOC with Bank #2 and the associated debt.

12. In or around December 2014, as part of a request to renew a $100,000 commercial line of credit for his company with another financial institution ("Bank #3"), **TWILLEY** submitted to Bank #3 a personal financial statement that failed to disclose the existence of his HELOC with Bank #2 and the associated debt.  When **TWILLEY** was questioned by a representative of Bank #3 as to why his credit report reflected a $200,000 HELOC due to Bank #2 that was not listed on his personal financial statement, **TWILLEY** falsely advised that there was no HELOC at Bank #2 as it had been closed when he opened the HELOC at Hebron.

13. In or about 2015, **TWILLEY** left his position as a member of the Board of Directors for Hebron.

14. In or around March, 2017, after he had difficulty servicing his debts, Hebron and **TWILLEY** commenced negotiations to restructure his loan payments.  On or about March 15, 2017, **TWILLEY** sent an email to a representative of Hebron containing a personal financial statement to be relied upon by Hebron as part of the restructure.  This personal financial statement failed to disclose the existence of his debt due on the HELOC with Bank #2, which then had a balance of approximately $176,000.  As a result, it underreported Twilley's outstanding liabilities.

15. In or around July 2018, **TWILLEY** declared bankruptcy and Hebron restructured all of **TWILLEY**'s personal and commercial debts.  In November 2018, the collateral for the

-4-

HELOC was sold and $163,081.88 of the proceeds was disbursed to Bank #2 as a lien holder in first position, thus depriving Hebron of $163,081.88 from the sale.

## THE CHARGE
(False Statement on Loan or Credit Application)

1.  The factual allegations contained in Paragraphs 7 through 16 of this Information are realleged and incorporated herein as if copied verbatim.

2.  On or about March 15, 2017, within the District of Maryland and elsewhere, the Defendant,

**BRIAN TWILLEY,**

knowingly made a false statement and report for the purpose of influencing the action of an institution the accounts of which are insured by the Federal Deposit Insurance Corporation in connection with an application to change and extend a loan, in that the defendant submitted to Hebron Savings Bank a personal financial statement omitting the existence of a debt owed to Bank #2, when in truth and in fact, as the defendant well knew, his liabilities were greater than that reflected on the personal financial statement.

18 U.S.C. §1014.

Date:  1/7/2021

RKR by _____
ROBERT K. HUR
United States Attorney